IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CANADIAN NATIONAL RAILWAY       )
COMPANY, INC.,                  )
                                )
              Plaintiff,        )
                                )
     v.                         )      No.  04 C 7901
                                )
GE CAPITAL RAIL SERVICES,       )
                                )
              Defendant.        )

## MEMORANDUM OPINION AND ORDER

General Electric Railcar Services Corporation ("GE Railcar")
seeks dismissal of Count I of the Amended Complaint brought
against it by Canadian National Railway Company, Inc. ("Canadian
National"), which asserts a claim for storage charges for
railcars that GE Railcar stored at Canadian National's facility
at Regina, Saskatchewan because GE Railcar did not have space at
its own facility there to take delivery of the railcars.  As GE
Railcar would have it, Canadian National has no right to impose
those charges by tariff.  Each side has submitted memoranda and
supporting material on the subject to aid this Court in resolving
the issue.

In diversity jurisdiction cases, Erie v. Tompkins principles
require federal courts to look to the law of the forum, including
its choice of law doctrines (Klaxon Co. v. Stentor Elec. Mfg.
Co., 313 U.S. 487 (1941)).  Both sides agree that those
principles point to Canadian law as providing the rules of
decision here.  Most recently Canadian National has tendered for

this Court's consideration the 15-page July 11, 2006 opinion by
the Honourable Madame Justice Wedge in Canadian Nat'l Ry. Co. v.
Neptune Bulk Terminals (Can.) Ltd., 2006 BCSC 1073 (a case
discussed in both sides' submissions). This Court is
insufficiently familiar with the hierarchical structure of
Canadian law to know whether such a decision triggers Erie
compliance (see Fidelity Union Trust Co. v. Field, 311 U.S. 169
(1940)), but in the absence of any contrary input the case will
be credited for that purpose.[1]

Paragraphs 94 through 96 of Neptune Bulk Terminals, a
photocopy of which paragraphs is attached, speak to the charging
of demurrage, which would seem in logic to be subject to the same
principles as the storage charges at issue here--even though GE
Railcar argues otherwise. If demurrage charges are considered to
be "in respect of the movement of traffic," that would appear to
be equally true as to the storage charges in controversy.

GE Railcar seeks to parse the statutes cited in Neptune Bulk
Terminals by arguing that storage charges are "incidental
services" that cannot be "in respect of the movement of traffic,"
but that contention does not face up to the parallel between
storage charges and demurrage in that respect. After all, the
identical agreement could be advanced as to demurrage charges,

---

[1] Indeed, even if that were not so, the other decisions
cited and quoted in the attached excerpt from Neptune Bulk
Terminals appear to justify such treatment.

but <u>Neptune Bulk Terminals</u> and the earlier cases that it cites have held otherwise.

Accordingly GE Railcar's motion to dismiss is denied. It is ordered to file its Answer to Count I on or before August 15, 2006.

_____
Milton I. Shadur
Senior United States District Judge

Date: July 31, 2006

Still appropriate today is the comment found in the opening paragraph of the introduction to Coyne, *The Railway Law of Canada* (1947), that:

> *The Railway Act* is not a codification of the law relating to railways. Its provisions cover a wide field; but an extensive territory is still governed by the common law rules with regard to carriers.

[92]   Without question, the *CTA* continues to impose on railway companies such as CN certain duties often referred to as "common carrier obligations" and to which CN refers to as "level of service" obligations. Those obligations are described in the provisions of s. 113 of the *CTA*, reproduced earlier. Section 113(1)(a) requires the carrier to furnish "adequate and suitable accommodation for the receiving and loading of all traffic offered for carriage on the railway", and for "the carriage, unloading and delivering of the traffic".

[93]   Nevertheless, a railway's relationship with its customer is a contractual one. Railway companies such as CN have level of service obligations described in s. 113 to provide "adequate and suitable accommodation", but only with respect to those with whom it contracts. That is made clear by s. 113(2) which requires the railway carrier to take, carry and deliver traffic "on the payment of the lawfully payable rate." CN sets the rate for the movement of the traffic, and once the customer has agreed to pay the rate, CN must deliver the cars to the destination specified in the contract.

[94]   Section 87 of the *CTA*, cited earlier, defines "tariff" as a schedule of rates and charges "applicable to the movement of traffic". Section 117, also cited earlier, stipulates that a railway company cannot charge its customers a rate "in respect of the movement of traffic" unless it is published in a tariff.

[95]    Demurrage is one of those rates or charges a railway company is entitled to

exact from its customers because it relates to the movement of traffic. In *Canadian*

*Pacific Ltd. v. Canada (National Transportation Agency)* (1992), 151 N.R. 16 at

para. 15, [1992] F.C.J. No. 1161 (C.A.), Hugessen J.A. quoted from the case of

*Canadian Pacific Ltd. v. Canada (National Transportation Agency) and*

*Canadian Millers Association*, [1979] 2 F.C. 809 at 822, aff'd [1980] 1 S.C.R. 319,

as follows:

> [D]emurrage is sufficiently related to the transportation of goods to be
> part of the rates in respect of the movement of goods within the
> meaning of [the statute]....

At paras. 29-30, Hugessen J.A. said the following:

> The obligations of a railway under a contract of carriage are not limited
> to movement in the simple sense of being or putting in motion but
> extend to far more. In particular, they include the obligation to deliver.
> To put the matter in its simplest terms, if "movement" is "carriage" it is
> not completed until delivery.
>
> ...
>
> "Movement", in the sense of carriage, refers to the whole process or
> series of actions by which grain is moved from origin to destination and
> it ends only with the placing or "spotting" of railcars so that they may be
> unloaded.

[96]    CN is paid by its customers to move their goods from origin to unloading at

the destination terminal. If demurrage is part of the rate for the movement of goods,

it follows that demurrage is chargeable to the party who contracts with CN to have

the goods moved.